UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
AHMED EL GHEUR

                Plaintiff,

      -against-

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
-----------------------------------------------------------X

**MEMORANDUM & ORDER**

07 CV 1254 (RJD) (RLM)

DEARIE, Chief Judge.

Plaintiff filed for Social Security Income ("SSI") on September 13, 2004. Tr. 52-56. After being denied initially, Tr. 25, and on reconsideration, Tr. 26, he was given a hearing before Administrative Law Judge ("ALJ") Larry Banks on May 11, 2006, in Washington D.C, Tr. 171-88. In a decision dated August 16, 2006, ALJ Banks determined that plaintiff was not disabled. Tr. 16-24. The Appeals Council denied plaintiff's request for review on December 7, 2006, Tr. 8-10, making the ALJ's decision the final decision of the Commissioner of Social Security ("the Commissioner" or "defendant"). Plaintiff began this action on March 26, 2007, and defendant now moves for judgment on the pleadings affirming the finding that plaintiff is not eligible for benefits.

## BACKGROUND

**A.  Facts**

    **1.  Vocational and Non-Medical Evidence**

Plaintiff was born on March 13, 1966, making him 40 years old at the time of his hearing, where he was represented by counsel. Tr. 174. Plaintiff has an eleventh grade education. Tr.

175. In 1992, he suffered a significant injury to his right hand requiring four surgeries, the last one taking place in 2003. Tr. 175-76. Even before the injury plaintiff had a very limited work history, working briefly as a messenger clerk in 1985 or 1986, and reporting no earnings since 1991. Tr. 185. Plaintiff was incarcerated on a drug conspiracy charge from 1998 until around 2004, sentenced to three years for the charge, and three years for absconding. Tr. 183. While incarcerated, the Federal Medical Center granted him "no work" status because of his hand problem. Id. After release, and ten months prior to applying for benefits, plaintiff worked briefly at the front desk of a hotel, but said that due to working with only his left hand could not keep up with the pace of work and had to stop. Tr. 175.

### 2. Medical Evidence

All of the medical evidence establishes that plaintiff's right hand is more or less unusable. In 1999, while incarcerated, Dr. Newcombe, of the Federal Medical Center, evaluated plaintiff as having a traumatic injury to his right hand, with atrophy and the absence of flexor tendon activity in his right thumb. Tr. 91-92. He was put on "no work" status until February 6, 2003. Tr. 92. On March 2, 2003, plaintiff had further surgery on his right hand at New York University Downtown Hospital by Dr. Philip Hendel. Dr. Hendel repaired a chronic median nerve laceration of the right wrist, and made a "difficult dissection involving a synovectomy" of the flexor tendons of the wrist. Tr. 106. A large neuroma was excised and the median nerve repaired. Id.

On February 14, 2005, plaintiff visited the Virginia Hospital Center for problems with his hand, reporting that surgery had not improved the condition. Tr. 159. Dr. Jorge A. Mondino examined plaintiff and noted a lack of sensation in plaintiff's middle and index fingers, and

thumb. Plaintiff was unable to make a fist, extend the fingers, or oppose the thumb to any of the fingers. Dr. Mondino diagnosed plaintiff as suffering from ankylosis (stiffness) and malfunction of the right hand secondary to multiple lacerations of the wrist. Dr. Mondino found the rest of the physical examination "unremarkable," and that the "only condition [plaintiff] claims to have is the right hand." Id. He concluded that the "patient is unable to work in a position that will require the use of the right hand. . . . He can work in a position that will be using mainly the left hand. The condition of his right hand is of a permanent nature." Tr. 159-60.

On March 18, 2005, Dr. R.S. Kadian, a state agency physician, reviewed the medical evidence to assess plaintiff's residual capacity. In the Residual Functional Capacity Assessment Form, Dr. Kadian noted that plaintiff could lift and carry ten pounds, stand and walk for six hours, and sit for six hours. Tr. 165. Dr. Kadian also determined that plaintiff's right hand was limited in reaching, handling, fine manipulation, and feeling. Tr. 166. On July 6, 2005, Dr. Syed Hassan, another state agency physician, agreed with Dr. Kadian's assessment. Tr. 170.

Plaintiff has occasionally complained of other medical problems. He twice went to the hospital complaining of pain in his left elbow that resulted from lifting weights. On August 16, 2004, plaintiff visited the Virginia Hospital Center for his elbow, and was diagnosed with medial epicondylitis (tennis elbow), Tr. 150, though x-rays showed no bone or joint abnormality, Tr. 155. He was prescribed ibuprofen and discharged. Tr. 147, 151. Plaintiff returned to the hospital on October 8, 2004, reporting that the pain in his elbow had not subsided. Tr. 127. Dr. Basil J. Vasilopoulous noted that plaintiff said he only feels pain when he tries to lift or push with his left hand. Otherwise, Dr. Vasilopoulous found no tenderness, and no discomfort on palpation anywhere in the left arm. Tr. 127. Plaintiff had painless and full range of motion at the

3

wrist, elbow and shoulder. Id. Dr. Vasilopoulous referred plaintiff to an orthopedic physician.

The record sporadically refers to plaintiff's complaints of non-exertional impairments—i.e., non-physical impairments—and of psychological diagnoses of plaintiff. Plaintiff has twice been diagnosed with an adjustment disorder, once on June 2, 1998, Tr. 99, and again on August 12, 2002, Tr. 108. Plaintiff also complained of poor concentration and insomnia at the August 12, 2002, consultation, and was prescribed trazodone, a drug with sedative and anti-depressant properties. Tr. 108.

## DISCUSSION

### A.  Legal Standards

#### 1.  Standard of Review

A district court does not review the Commissioner's decision regarding a claimant's eligibility for disability benefits de novo. Beauvoir v. Chater, 104 F.3d 1432, 1433 (2d Cir. 1997). Rather, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). A district court will therefore set aside an ALJ's decision in only two situations: "[(1)] if the factual findings are not supported by 'substantial evidence' or [(2)] if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

A reviewing court must "examine the entire record, including contradictory evidence and

evidence from which conflicting inferences can be drawn." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983)). If, upon a review of the whole record, the court finds that the Commissioner's decision is not supported by substantial evidence or is based upon legal error, the court is empowered to modify or reverse the decision, with or without remanding the case. 42 U.S.C. § 405(g).

### 2. Determination of Eligibility for Benefits

A claimant is "disabled" within the meaning of the Social Security Act, and thus eligible for benefits, only if "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). The Social Security Administration has established a five-step process for determining whether an applicant is disabled:

> [T]he Commissioner determines (1) that the claimant is not working, (2) that he has a "severe impairment," (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003) (alteration in original) (quoting Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002)); see also 20 C.F.R. § 404.1520(a)(4). Although "[t]he burden is on the claimant [at step four] to prove that he is disabled within the meaning of the [Social Security] Act[,] . . . if the claimant shows that his impairment renders him unable to perform his past work, the burden then shifts to the [Commissioner at step five] to show there is other gainful work in the national economy [that] the claimant could perform."

5

Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir.1998).

**B.      The ALJ's Finding**

Based on the five-step evaluation, in his August 18, 2006, decision, ALJ Banks found that plaintiff: (1) has not engaged in substantial gainful activity since September 15, 2003; (2) suffers from ankylosis and malfunction in the right hand, and is thus severely impaired; (3) does not have a listed impairment; (4) has the residual functional capacity to perform activities at the light exertional level, excluding the ability to climb ropes, ladders and scaffolds, but including the ability to perform other postural movements on a frequent basis; and (5), cannot perform past relevant work, but that there exist sufficient available jobs in the national economy that he can perform, given his age, education, work experience, and residual capacity. Tr. 20-24. Plaintiff makes three arguments to challenge the ALJ's findings, all of which fall short.

**1.      The ALJ's Finding of "Light Exertional Work"**

Plaintiff contests the ALJ's finding that plaintiff could perform light work.[1] In finding that plaintiff was capable of a limited range of light work, the ALJ gave "significant weight" to the opinion of Dr. Mondino, the orthopedic surgeon who evaluated plaintiff for the Virginia State Department of Rehabilitative Services on February 14, 2005.[2] After a physical examination and interview, Dr. Mondino diagnosed plaintiff with ankylosis and malfunction of the right hand, and

---

[1]"Light work" requires that the claimant be able to lift up to 20 pounds at a time, with frequent lifting up to ten pounds. 20 C.F.R. § 416.967(b).

[2]The record does not include the opinion of any "treating source." A "treating source" is defined as the claimant's own physician, psychologist, or other acceptable medical source who has, or at some point had, an "ongoing treatment relationship" with the claimant. 20 C.F.R. § 404.1502. Although Dr. Mondino has not had an ongoing treatment relationship with plaintiff, and therefore should not be considered a treating source, the record reflects that he has performed the most recent, extensive evaluation of plaintiff's condition.

6

opined that the condition would make it impossible for him to perform any job requiring use of his right hand. Tr. 159. Otherwise, Dr. Mondino concluded that plaintiff can "work in a position that will be using mainly the left hand." Id. The ALJ gave lesser weight to Dr. Kadian, who opined that plaintiff could work at a sedentary level, checking a box indicating that plaintiff had the ability to lift only ten pounds. Tr. 165. The ALJ also gave lesser weight to Dr. Hassan, who affirmed Dr. Kadian's assessment, writing that "claimant has described daily activities that are significantly limited . . . and the claimant's statements are found fully credible." Tr. 169. However, these latter assessments more specifically described plaintiff's lack of function in his right hand, as evidenced by Dr. Hassan's explicit notation that "claimant's only impairment is the R hand." Dr. Kadian's assessment likewise noted that "[t]he claimant's limitations are in his right hand." Tr. 166. Dr. Hassan's evaluation also gave Dr. Mondino's report—which found plaintiff could work with his left hand—"great weight," and adopted its assessment. Id.

ALJ Banks's decision to give Dr. Dr. Mondino's opinion "significant weight" was based upon substantial evidence. Dr. Mondino thoroughly evaluated plaintiff and fairly assessed his lack of function in the right hand while noting no complaints from plaintiff regarding other possible limitations. The ALJ was also justified in giving Dr. Kadian's and Dr. Hassan's opinions "lesser weight," as these consultations did not include examinations and understandably focused on plaintiff's right hand's limitations only, not his overall residual capacity. The Court concludes that the ALJ did not err in determining that plaintiff could perform light exertional work that does not include use of his right hand.

2. **Plaintiff's Complaints of Pain Affecting Residual Capacity**

Plaintiff contends that the ALJ also erred when evaluating plaintiff's subjective

7

experience of pain affecting residual capacity. As the Second Circuit has explained,

> disability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment. Otherwise, eligibility for disability benefits would take on new meaning. The severity of pain is a subjective measure—difficult to prove, yet equally difficult to disprove. We must not constrain the [Commissioner's] ability to evaluate the credibility of subjective complaints of pain. . . .

Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983). ALJ Banks acknowledged that a person with plaintiff's condition would experience pain in his right hand and arm. Tr. 22. With respect to the debilitating nature of the pain as it would affect residual capacity, however, the ALJ found plaintiff's complaints were not supported by the medical evidence. See 20 C.F.R. § 416.929.[3] The ALJ heard testimony that the plaintiff wears a brace to protect his hand because touching it creates a shooting pain "like an electric shock." Tr. 178. He said movement can cause pain as well. Plaintiff claims he experiences a constant pain in the wrist, "that's like an arthritis type pain," id., for which he takes ibuprofen two to four times a day.

However, as the ALJ determined from plaintiff's testimony, plaintiff engages in a fair amount of daily activity. He does some chores, he runs two or three times a week, shops for groceries, and at least historically has lifted weights with his left arm. Tr. 22, 179-80. Furthermore, plaintiff's own testimony suggests that the limitations he describes come from his inability to effectively use both hands, rather than from debilitating pain. Although he says he cannot easily tie his shoes, cannot cut his food, and everything takes "twice the time" for him to

---

[3]Under 20 C.F.R.§ 416.929, the ALJ first determines whether there is a medically determinable impairment that could reasonably produce the kind of pain plaintiff alleges. Second, after looking at all of the evidence, the ALJ evaluates whether the intensity, persistence, and effects of the alleged pain limits plaintiff's ability to do work or basic activities.

complete, Tr. 179, the evidence suggests that this is because he only has use of his non-dominant, left hand, not because of pain in his right. Indeed, when describing why he left his job as a hotel clerk, he cited his difficulty keeping up with the work because of insufficient facility with his non-dominant, left hand. He did not mention pain. As plaintiff testified, "I wasn't able to rapidly use the computer right or checking people, check them out. Basically I couldn't use my left hand. I couldn't use it fast enough. I couldn't do the work fast enough." Tr. 175. Plaintiff elsewhere testified that so long as the activity did not require writing, or the use of two hands, he can perform it. See Tr. 177, 180.

While the ALJ acknowledged that plaintiff's condition could reasonably be expected to cause pain, that pain must be debilitating, sufficient to preclude him from doing light, exertional work. In making that determination, the ALJ is required to consider "all of the available evidence," 20 C.F.R. § 416.929(a), including medical reports, plaintiff's demeanor at the hearing, and his testimony regarding his actual physical activities, see Dumas, 712 F.2d at 1553 ("The [Commissioner] is entitled to rely on the medical record and his evaluation of claimant's credibility in determining whether claimant suffers from disabling pain."). Given the entirety of the record, the Court finds sufficient evidence for the ALJ to conclude that plaintiff's complaints of pain in his right hand would not preclude him from doing light exertional work using only his left hand.

### 3. The ALJ's Reliance on the Vocational Expert

Plaintiff also questions the ALJ's reliance on the vocational expert. Where the claimant shows both exertional and non-exertional impairments, the ALJ cannot exclusively resort to the "grids" to sustain the Commissioner's burden at step five, but must consider the testimony of a

vocational expert if the non-exertional limitation "causes a more than negligible loss of work capacity." Sobolewski v. Apfel, 985 F.Supp 300, 310 (E.D.N.Y. 1997) ("Exclusive reliance on the grids is inappropriate if the grids fail to accurately describe a claimant's particular limitations . . . . If application of the grids is inappropriate, the Commissioner must engage a vocational expert to testify to the claimant's capacity to work."). Since plaintiff could not perform the "full range" of light work, the ALJ heard testimony from Dr. Adina Leviton, the vocational expert ("VE"). The ALJ posed two hypotheticals to the VE. First, the ALJ asked:

> Assume that the person could perform no more than light exertional activity as defined in the Commissioner's regulations. The person should do no climbing of ropes, ladders or scaffolds. Can perform other posture movements on a frequent basis. The person should avoid tasks that requires [sic] more than minimum writing and also essentially avoid jobs that require the use of his right dominant hand. Are there jobs such a person can do?

Tr. 185. In response, the VE found that at the light unskilled level, available jobs included: counter clerk (over 250,000 nationally, 2,300 locally); ticket taker (250,000 nationally, 2,300 locally); and parking lot attendant (over 150,000 nationally, 1,400 locally).

For the second hypothetical, the ALJ asked the same question, but characterized plaintiff's ability as "no more than a sedentary exertional activity." Tr. 186. The VE opined that no such jobs would be available, considering that most sedentary jobs involve more than occasional use of both hands. Id.

Plaintiff complains that the ALJ did not inquire adequately into the basis for the VE's opinion or her credentials. Plaintiff argues that the ALJ did not follow Fed. R. Evid. 702 or Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993), in determining whether the expert testimony rested on a "reliable foundation." However, the regulations clearly state that an

10

ALJ may receive evidence at the hearing that would be inadmissible under the Federal Rules of Evidence. See 20 C.F.R. § 416.1450(c) ("The administrative law judge may receive evidence at the hearing even though the evidence would not be admissible in court under the rules of evidence used by the court."). Furthermore, "Rule 702 does not apply to disability adjudications, a hybrid between the adversarial and the inquisitorial models." Donahue v. Barnhart, 279 F.3d 441, (7th Cir. 2002) (citing Richardson v. Perales, 402 U.S. 389 (1971)). Defendant also notes that plaintiff, though represented at the hearing, never objected to the basis for the VE's opinion or her credentials.

Plaintiff further argues that the ALJ did not inquire as to the basis for the VE's finding that suitable jobs were available. The record shows otherwise. First, as the ALJ writes in his decision, the VE's testimony concerning the number of available jobs is consistent with the Dictionary of Occupational Titles. Second, because the ALJ could properly conclude that pain in plaintiff's right hand did not preclude him from performing light exertional work using primarily his left, the ALJ was not required to ask the VE to consider the limitations caused by pain. See Wolfe v. Comm'r of Soc. Sec., 272 Fed. Appx. 21, 23 (2d Cir. 2008) ("The Commissioner may rely on testimony of a vocational expert in response to a hypothetical regarding availability of jobs so long as the hypothetical is based on substantial evidence."). Third, at the hearing, plaintiff's attorney cross-examined the VE and asked several questions as to how the jobs of counter clerk, ticket taker, and parking lot attendant would suit someone like plaintiff:

> Q: What is the hand use requirement for a counter clerk?
>
> A: An example of this one would be like at CVS [drugstore], the person at the photo developing part where they take the envelope they give back the envelope and take the money. They can use the non-dominant hand for

> that. It's not high pressure, consistent, repetitive, fast-paced kind of thing. As long as he's able to use one hand, he'd be able to do that.
>
> Q: Okay. But I guess what you're saying is that the non-dominant hand use in the counter clerk position is different than the level of productivity that would generally be required of the non-dominant hand in the sedentary occupation.
>
> A: Right. Because in the sedentary occupation it would be more constant. More writing would be involved, more production or assembly-type work where you need to use both hands on a consistent basis. But the counter clerk position, the job could be done using primarily the non-dominant hand.

Tr. 186-87. The VE gave similarly appropriate answers to questions about the ticket-taker and parking lot attendant positions. Where the VE gave testimony providing the basis for his findings, the ALJ cannot be faulted simply because plaintiff's attorney, rather than the ALJ himself, asked the questions.

In sum, the ALJ had a sufficient basis to rely on the VE. The ALJ posed a hypothetical that included no use of his injured arm and limited writing (plaintiff says he can write with his left hand, but slowly). The VE gave three examples of available jobs and explained in detail why she thought those jobs were suitable for plaintiff. This constitutes "substantial evidence," which is the standard for reviewing an ALJ's findings and decision. The ALJ does not need to establish the more rigorous evidentiary standard of Fed. R. Evid. 702 or <u>Daubert</u> to rely on the VE's opinion.

## C. Oral Argument and Request for Authorities

As demonstrated by the discussion above, the main issue regarding this action has been whether plaintiff's non-functional right hand, of itself, makes plaintiff "disabled" under the SSA. For clarification on this point, at oral argument the Court asked the parties to present for its

inspection any rulings relating to the finding of disability where plaintiff has no use of the dominant hand, as the ALJ assumed. In response, plaintiff submitted Social Security Ruling 96-9p,[4] highlighting the following section:

> Manipulative limitations: Most unskilled sedentary jobs require good use of both hands and the fingers; i.e., bilateral manual dexterity. Fine movements of small objects require use of the fingers; e.g., to pick or pinch. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger motions.
>
> Any significant manipulative limitation of an individual's ability to handle work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base.

Social Security Ruling 96-9p, 1996 SSR LEXIS 5.

A plain reading of Social Security Ruling 96-9p shows that it does not support plaintiff's argument. Rather, it simply states what the ALJ correctly assumed: that unskilled *sedentary* jobs require extensive use of both hands and fingers. It does not say the same about unskilled *light* work, which, as the VE explained, comprises jobs that often do not require extensive use of the hands. See also Social Security Ruling 83-10, 1983 SSR LEXIS 30 (stating that light work generally does "not require use of the fingers for fine activities to the extent required in much sedentary work."); Rivera v. Sullivan, 771 F. Supp. 1339, 1347 (S.D.N.Y. 1991) (vocational expert testified that thirty to forty percent of unskilled, light jobs can be performed without use of dominant hand). No authority has been presented to the Court that undermines the VE's or the ALJ's determination that there exist sufficient jobs in the national and local economy for unskilled, light work that does not require the use of the dominant hand.

---

[4]Social Security Rulings represent "precedent final opinions and orders and statements of policy and interpretations that [the Social Security Administration] has adopted." 20 C.F.R. § 402.35(b)(1) (quoted in Ginsberg v. Astrue, No. 05-cv-3696, 2008 U.S. Dist. LEXIS 63447, at *29 (E.D.N.Y. Aug. 18, 2008)).

**D.  New Evidence**

Finally, in the alternative, plaintiff seeks remand based on the introduction of new evidence. Plaintiff seeks remand to introduce: (1) a Medical Report for General Relief and Medicaid signed by Dr. Siphath Chrea, a general practitioner, dated September 30, 2004, which concludes that plaintiff's right hand is impaired; (2) an excerpt of a six page report by Arbor Education and Training WeCare Program ("Arbor Education"), dated August 16, 2006, which concludes that plaintiff's right hand is impaired and that he suffers from recurrent depressive order, panic disorder, and post-traumatic stress disorder ("PTSD"); and (3) a two-page report by Treating Physician's Wellness Plan, dated October 9, 2007, which concludes that plaintiff is "temporarily unemployable" because of his hand and depression.

Under the sixth sentence of 42 U.S.C. § 405(g), to introduce new evidence plaintiff must show that the evidence is material, not merely cumulative, and that plaintiff has good cause for failing to produce it earlier. See Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988). First, plaintiff has not shown good cause for his failure to produce the evidence at the hearing. Instead, plaintiff cites as "good cause" the ALJ's failure to ask plaintiff whether public assistance had made a determination regarding plaintiff's ability to work. Plaintiff suggests that had the ALJ done so, this would have somehow unearthed these records that plaintiff now seeks to introduce. But plaintiff cites no authority in support, recognizes that other agency decisions are not binding upon the Commissioner, and, most importantly, does not explain how the ALJ's actions in any way prevented plaintiff from producing these records. Without establishing a cognizable legal error on the part of the ALJ, plaintiff cannot so easily sustain good cause for failing to introduce available evidence. See, e.g., Miller v. Barnhart, No. 03 Civ. 2072, 2004 U.S. Dist. LEXIS

21964, at * 31 (S.D.N.Y. Nov. 1, 2004) (granting sentence-six remand in pro se case where ALJ failed to correctly apply treating physician rule and erred in not putting medical records in question into evidence). To allow good cause based on plaintiff's argument would render the requirement all but meaningless; plaintiff could establish good cause to introduce virtually any new evidence merely by observing that the ALJ failed to ask for it.

Second, it is doubtful whether any of this new evidence would be material. "For new evidence to be material, it must be 'both relevant to the claimant's condition during the time period for which benefits were denied and probative,' and there must exist 'a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently.'" Bradley v. Barnhart, 87 Fed. Appx. 190, 192 (2d Cir. 2003) (quoting Jones v. Sullivan, 949 F.2d 57, 60 (2d Cir. 1991)). Clearly, any new evidence pertaining to plaintiff's hand is cumulative and not material, given that the basis of the ALJ's decision allowed for complete non-use of the right hand. The remaining documents plaintiff seeks to introduce, regarding depression, panic disorder, and PTSD, are either unsubstantiated by any clinical evidence, or relate to a time outside of the disability period.

Plaintiff seeks to introduce a report by Arbor Education diagnosing him with depression, panic disorder, and PTSD, but plaintiff provides the Court with only the first and last pages of that report. The excerpt includes the report's title page and medical conclusions, but does not provide medical explanations or show whether the diagnosis was based upon clinical evidence. Moreover, aside from a diagnosis of adjustment disorder in 1998, and a diagnosis of adjustment disorder, impaired concentration and insomnia in 2002, plaintiff has not shown any history of psychological impairment. Indeed, during his hearing, plaintiff never complained of any

psychological difficulties at all, despite an extensive direct-examination by his attorney.[5] Therefore, given the truncated, conclusory nature of the Arbor Education excerpt, and plaintiff's lack of history of psychological problems, the Court does not find "a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." Bradley, 87 Fed. Appx. at 192.

Plaintiff also seeks to introduce a report by Treating Physician's Wellness Plan, dated October 9, 2007, which describes plaintiff as "temporarily unemployable" because of his hand and depression. However, the Court finds the report immaterial because it falls well outside of the disability period—which ends August 18, 2006, predating the report by more than a year—and does not refer to plaintiff's condition as existing within that period. See Robles v. Commissioner of Soc. Sec., No. 99 Civ. 4248, 2001 U.S. Dist. LEXIS 1896, at *24 n.6 (S.D.N.Y. Feb. 27, 2001) (questioning materiality of doctor's letter where it fell seven months outside the disability period and "contained no clear reference to the period under consideration"); Timmons v. Sullivan, No. 88 Civ. 6612, 1989 U.S. Dist. LEXIS 15132, at *25 (S.D.N.Y. Dec. 19, 1989) (finding evidence not material where it concerned plaintiff's condition as it existed more than one year after end of disability period.). In sum, because plaintiff has shown not shown good cause or the materiality of the proffered new evidence, his request for remand on that basis is denied.

---

[5]Plaintiff's only reference during his hearing to a psychological-related ailment was that he "used to take medication for stress, but I no longer do that since I do some sports as [sic] running." Tr. 181.

16

## CONCLUSION

For the reasons stated above, the Court finds that the ALJ's determination is supported by substantial evidence in the record and was based on the correct legal standards. The Commissioner's motion for judgment on the pleadings is granted. The Clerk of the Court is hereby directed to enter judgment for the Commissioner and close this case.

SO ORDERED.

Dated: Brooklyn, New York
      September 30, 2008

s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge